May it please the court, counsel? My name is Shanoa Payne and I represent petitioner Stephen Thorstenson. I see my time is not running. Can you hear me? We can hear you. It's fine. The issue before the court today is whether the railroad 72 hour late reporting rule violates the Federal Railroad Safety Act, when the rule automatically and seriously disciplines employees for late reporting of protected injuries, even in circumstances when the employee cannot comply with the rule, railroad's rule, because the employee has not discovered the nature or extent of the injury until after the 72 hour reporting window has passed. Under such circumstances, because the rule discourages reporting of protected workplace injuries and undermines the safety purposes of the FRSA, the railroad's late reporting rule violates FRSA. Can I can I jump in and just ask you to respond to the other side's framing of the case? Because they of course say that actually the issue is not we're not being asked to decide whether this particular workplace rule is reasonable or lawful or any of that, that we're not sitting here as some kind of OSHA's, you know, OSHA's Super Review Board that gets to opine on whether we think this is a good rule for an employer to have or not. Rather, our very narrow task is to decide whether your client has shown that he was retaliated against for filing for engaging in protected activity. So maybe can you and then, you know, the evidence sort of suggests not that really what he was disciplined for was the late filing of the report as opposed to filing the report itself. So can you maybe respond to their framing of the issue before us in that respect? Well, sure. I mean, I think you have to look at the Department of Labor's own guidance, which should be given skid more deference in this case, because they haven't even challenged the reasonableness of their own guidance. But their own guidance says that, sure, there's legitimate reasons for perhaps having time and manner rules for reporting workplace, protected workplace injuries. But in order for those time and manner rules to comply with the Federal Railroad Safety Act, those rules have to be both reasonable and they So the agency must look at whether the rule is reasonable and whether it unduly burdens an employee's ability to report workplace injuries. And so that is, let's say that it does. Let's say that I agreed with you that, yeah, this rule is pretty unreasonable, especially if you apply it with no exceptions made. We're just going to discipline everybody. If you file your report a minute after 72 hours, we don't care what the circumstances, we're quite unreasonable and possibly unlawful. But we're not really, that's why I guess I started where I did. We're not really here to decide that question. We're here to decide whether your client was retaliated against. And all of the evidence that I see in the record suggests that the answer is no, that there wasn't any attempt to punish him for the mere filing of the report. It really was because it was late. And, you know, he filed all those earlier reports on time. He never got disciplined. There's a consistent pattern of, you know, even in circumstances kind of close to this, where a person is just a couple of days late, they still discipline the person, right? So there was just kind of consistent evidence across in terms of how the employer went about enforcing this rule, I think completely unreasonably perhaps, but nonetheless consistently. And so doesn't that undermine your client's position that no, I was really being retaliated against for engaging in the protected activity itself? If an employee cannot comply with the rule, because in this case, petitioner didn't have a reportable injury until outside the 72 hour rule, then the rule itself is punishing the protected activity. It's not punishing the timeliness of the report. And if an employee, if there's a class of employees that literally cannot comply with the rule, and will always be disciplined, because they cannot comply with the rule, then the rule unduly burdens reporting because that class of employees who discover that they have an injury outside the 72 hour window are discouraged from reporting. And the Federal Railroad Safety Act, its purposes is to protect those employees from discrimination and retaliation for reporting their injuries. And that's exactly what happened here because those employees are guaranteed discipline if they report outside of that 72 hour window. And although the employees here may have had a good faith belief that they were merely enforcing a rule, this court held in frost that a good faith belief of enforcing a rule isn't enough. Because even if the report played even a small role in that discipline, that's enough to meet the retaliatory motive in under the FRSA. And there's no doubt that Forstenson's filing of his protected report played a role in his discipline. You can't separate the two without him filing. Let me go back. And this really is piggybacking off of Judge Watford for the issue that bothers me. This rule seems to leave a gap for those who haven't discovered that they had a reportable injury, a musculoskeletal injury within 72 hours. And arguably, your client falls in that even though he knew he did something on a certain day, he hit his knee on the desk or whatever. So in the construct of this case, are we required to find that that rule is unlawful in terms of putting forward a defense in order to have a ruling in favor of your client? No, I don't know that you have to find that the rule is unlawful in its face. I think you can find that the rule as it was applied in the circumstances was, or let me rephrase that, that BNSF failed to prove its affirmative defense under the circumstances. Our position is that it's unlawful as applied to a class of employees that failed to discover their injuries outside the 72 hour because. That's a lot of words. So I just want to get to the reality because the first step is, did they prove their affirmative defense? And I take it your argument is that because of this rule, as applied to your client, they didn't establish that defense. But then that would require us to say that there's something wrong with the rule, wouldn't it? Yes and no. I mean, there's other factors. For instance, I would say that the ALJ and the ARB erred in finding that BNSF met the three CAR factors. The second CAR factor was not established by BNSF because the ALJ and ARB had already determined that BNSF had retaliatory motive towards injured employees by imposing a discriminatory review period. And so it makes no sense. And there was not substantial evidence for the ARB and the ALJ to then turn around and say that the same decision maker that imposed the discipline for late reporting had an absence of retaliatory motive when that same decision maker discriminated against Thorstensen, petitioner here, for filing a protected workplace injury in 2009. And then for the reasons that I stated in my brief, the third CAR factor wasn't established because BNSF failed to present adequate comparator evidence such that Thorstensen was not treated in a nondescript, was treated in a nondescript manner from those employees that were not injured. All BNSF proved in this case was that every time it disciplined employees that for late reporting, that protected activity, it wasn't in the absence of protected activity. And the statute requires BNSF to prove its affirmative defense by clear and convincing evidence that it would have taken the same action in the absence of the protected activity. And that is something that BNSF could not do. How could you explain for me why it is you argue that the comparison evidence that BNSF gave is irrelevant, and it's the wrong comparison. Can you explain your argument again? I know you put it out in your brief, but it is clear. Yeah, because the affirmative defense, in order to prove the affirmative defense, the railroad must establish that it would have taken the same action absent the protected activity. And what BNSF did here was only show that every time it took that action, it did so in combination with the protected activity. What it also did was, and so under Frost and under this another reason that's not the protected activity, but as long as the protected activity is even a small factor, the railroad cannot prove its affirmative defense. So there was no way that the railroad could establish that it would have taken the disciplinary action here for late reporting absent the protected activity. The railroad simply couldn't establish that. And in Brow, the ALJ recognizes much by saying that the way this kind of comparator evidence work flips the causal standard on its head, because what it's saying is it allows a railroad to attempt to prove its affirmative defense by showing that every time it takes the adverse action, it does so in combination with the protected activity. And that's not a way to prove it's affirmative defense. But let's, let's assume that the evidence showed that 100 employees filed injury reports on time and not a single one of them suffered any adverse action. And conversely, 10 employees out of that set filed a late report and all 10 of them were disciplined. On that record, how could you come to any conclusion other than that? It was the late filing. That was the trigger for the discipline and not the protected activity itself. Well, I think you have to remember here that that wasn't the only evidence. The railroad here also treated more harshly employees that did file timely knee injury. And the ARB and the ALJ found that it had a discriminatory policy of treating injured employees in a discriminatory fashion by disciplining them more harshly, even for those timely reports. So even that evidence alone doesn't show that BNSF doesn't discipline employees for even when they file timely injuries. So that, that timeliness isn't the distinguishing factor here. BNSF absolutely was disciplining employees, if they had a timely injury report within the last five years, disciplining them more harshly. You want to take the remaining time for a rebuttal? Yes, thank you. I was just going to say that. Thank you. You may proceed. Good morning, your honors. May it please the court. My name is Sarah Cauderlier and I represent the Department of Labor. In this case, substantial evidence supports the ALJ's finding as affirmed by the ARB that BNSF met its affirmative defense under FRISA, namely that it would have issued a level S discipline to Mr. Thorsonson for failure to report an injury within 72 hours, even in the absence of his later protected injury report. Under the deferential standard of review applicable in this court, that decision should be upheld. Can I ask you to just cut to the chase for me, at least, which is that this rule seems unreasonable. If you are going to apply it to people who, let's say that they didn't learn until after 72 hours that they had suffered any injury at all. So there wasn't anything for them to report. And yet, when they do come forward, once they learn to get disciplined, that just seems crazy. That shouldn't be permissible. And I'd be surprised if you're going to defend that. Or let's say that you have someone more kind of closer to our facts where, yeah, the person bumps their knee, but they're like, this isn't an injury. I don't have to report this. I'm not, you know, I can continue to work. And it's not until after 72 hours that they're like, oh, actually, this thing has now turned into something more serious. I better report it. In both of those scenarios, I just don't see how the employer's enforcement of this rule is consistent with the act. And so I'm convinced of that point. But then I don't know what to do with that in terms of resolving this case. So can you help me sort through those issues? Yes, your honor. So it's true that, you know, while a rule may seem unfair or arbitrary, what matters for purposes of FRISA is whether it was discriminatory as applied in the case before the court. And so, you know, an ALJ or a court can find that the same rule was discriminatory as applied to the circumstances of one complainant and not another. And that's, in fact, what the ALJ who decided the Brough case cited by the petitioner, you know, she found that the rule was discriminatory in that case because of other evidence of shifting explanations for the discipline, pretext, evidence that, you know, led them to believe that there was no way that the complainant could have complied with the rule. She later found in Meyer that the rule was similar to what we have here, where an employee, a discreet event happened, hurt himself by bending over, felt a pain, thought it was merely aggravation and did not report and found that the affirmative defense was met by BNSF in that case, that it was just a consistently applied rule, maybe not the greatest rule, maybe not the fairest rule, but not discriminatory under FRISA. But isn't it, isn't the problem that there really is no explanation for the rule that you can put forward? Clearly, it's not going to, I mean, we read the reasons you put forward in your brief, but none of them make any sense. And absent some reasonable explanation for why this rule exists in the unfair state that it exists, we don't, we just revert back to a presumption that caused the concern of Congress in passing this statute in the first place, that railroads have consistently discouraged and discriminated against people reporting injuries. So when you're looking for a reason behind the rule, you turn to the fact that this may be an inherently retaliatory, because we can't find what other reason is there for this rule? The justifications for the rule that the ALJ considered are, you know, what is kind of described in the OSHA guidance, you know, that the railroad has a significant interest in making sure that their workplace is safe, both for other employees and for the public, and also ensuring prompt medical care for an injured employee as, you know, without prompt medical care, they could have an aggravation, it could end up a much worse injury than it would have otherwise been. And in this case, I think what you really need to look at is, was the rule being used as a pretext to actually discriminate on his protected injury report? And I think the difficulty we're having is that we can hear all of that, but it makes no sense. And I'll tell you why. How is it possible that you can have a rule that you cannot comply with? And in this case, if you're not required to report these changes until the symptoms affect your work, and if that's 72 hours after the triggering event, the rule simply cannot be complied with, can it? So I think if it was true, given the evidence, first, let's go is that that's a yes or no answer. Yes, if it was impossible for an employee to comply with, that could indicate potential pretext that the rule is being applied so harshly, that it is essentially discriminating against the protected injury report. And I think that the ALJ here properly considered this question as it pertains to Mr. Thorsonson, which is that he had complied with the rule many times before. He did have pain following a discrete event that became worse and worse over these three days. Here's the question. Did he work during that time? When did it affect his work? He got to that situation, he was within the 72 hours, was he not? He did work during that time. However, he actually violated the rule in two separate ways, which I think is partly what the ALJ considered when deciding whether, you know, the affirmative defense was met. He did go and visit a doctor two days after the injury, and still did not of how unreasonable the rule is, that the rule says that you can't go see a doctor until after you've reported and recognize the serious injury. How is a person, how's a railroad worker supposed to know whether his injury is serious or not without going to see a doctor? I think at that point, all he needed to do under the rule is inform the supervisor that he's going to the doctor for a symptom. The third part of the rule is that he then file a report within the 72 hours. So when he did go to the doctor, you know, he explained his knee bump injury, that it was much worse symptoms than what he'd experienced before. And that was all noted in the record of the doctor's appointment. And then, you know, that was the second day, still had, you know, a whole other day that he could inform his workers about this and did not. And so, you see right there, you're telescoping his reporting time, simply because he went to the doctor. So doesn't he have 72 hours after that, or 72 hours after it affected his work? No, the decision makers consistently described their belief and prior application of the rule in the way it was applied here, which is that if there's any symptoms of, you know, following any kind of incident, and they testify that they believe the knee bump to be a discrete incident that he had knowledge of and awareness of that he could have reported and should have. And again, it, you know, it may not be seem like a fair rule, a good rule. No, I mean, the problem is not whether it's always fair or good. It's really sort of impossibility. In other words, every time you bump your hand on the computer or bump your knee, if you've had a prior injury, or maybe it's a new injury, you shouldn't have to report that because then you would undoubtedly get some rather discriminatory and retaliatory conduct because you'd report every day you bump into something, something happens. So that would be unrealistic. But why do you have this guidance that it has to, you don't have to report unless it affects your work? What doesn't that take the teeth out of that aspect? Um, I, I'm not really aware of, you know, evidence that it had that the rule says it has to enforce work, it's mostly just that, you know, if there is any sort of injury, and while that may have been a vague term, you know, the, the managers consistently believe they were just enforcing a timeliness rule, they were not enforcing something discriminatory because he reported an injury, which they actually encouraged him to do. And with that, I see that my time is up. No, there's not. All right, we'll hear from the NSF. Thank you. Good morning, Your Honors. May it please the Court, Jacqueline Holmes for the idea that he did not need to report symptoms unless they affected his work had to do with the fact that he had been released for work from a prior injury. It did not have to do with enforcement of the injury rule at the outset, right? So the rule at BNSF is that if you are injured at work, you have to report that promptly, regardless of whether it affects your ability to work. That's the rule that was being enforced here. There is mention from the ALJ of the other circumstance, and that's because Mr. Thorstensen on his own chose to report changes in symptoms consistently, right? If he had any changes in symptoms, he was calling his manager and all of that. That had to do with the fact that he was returning from a prior injury. So I hope that's clear. There's two different things at work there. Yeah, I understand that. So in this case, when he goes to the doctor, is it your view that the 72 hours runs from the time he, his knee hit, even if he doesn't even know if it's going to be a problem? So again, there is, there's of course going to be some circumstances if you've pointed out where the employee genuinely doesn't know, right? And I don't see any evidence in this record that it's necessarily enforced when the employee doesn't know. Here what you have is an employee who goes to the doctor and says to the doctor, hey, I hit my knee at work and I think it made things worse. That's what he told the doctor. That's what the ALJ's factual finding is. And at that point, remember that this is not some complicated process. All he had to do was pick up the phone and call his manager and say, hey, I hit my knee the other day. Wait a minute. He had two visits to the doctor. That's correct. First visit to the doctor. All they did was give him pain medication. They did not tell him it was a serious injury and that he should be not going back to work. It wasn't until the second visit to the doctor. And that second visit, he, he filed his notice. I think it was the same day or the very next day, which was well within 72 hours from the time he became aware that it was a serious injury. And let me mention something else in the facts of this case is as it came out from the record, he actually mentioned it to a couple of other people, his train manager or something. And they told him that they would consider it just a continuation of his former injury. So that's, that's right. Those notifications were all made on November 22nd, but it's not again, the rule does not require him to report only when it's a serious injury or only when it's going to that's in the order at footnote 30, which is in the excerpts of record at 38. He told his doctor on November 19th, that the knee had been aggravated by banging it on the desk. That's the ALJ factual finding for which there's substantial evidence in the record. And so at that point, he does know that something happened and it's appropriate for him to report the ALJ also found that this does aggravated aggravated, does he know that that requires him to make a new? He did know, frankly, and the ALJ found that it was at that stage appropriate for him to report the ALJ also found that he knew quite well, if he was confused exactly what to do, make a phone call to his union, to to a train master, to anyone to say, Hey, do I need to report this? That would not have been an unreasonable thing for him to do. And it would not have been a difficult thing for him to do. And it's also not an unreasonable thing for us to require. It does make sense to require timely reporting in a situation like the railroad, where there are hazardous conditions that managers often don't see because they're not out, you know, we might have a manager 100 miles away from his or her employee, right? And so that there's a reason for that rule. There's an and it's been acknowledged again by the ALJ, the ALJ looked at all of this, the ALJ listened to all the claims by Mr. Thorson's and that he didn't know what to do. And the ALJ rejected those. And to your question at the outset, Judge Watford, the way this statute is set up, it is to resolve individual claims of retaliation or discrimination. It is not to bring a broad based claim against the policy. It's not to determine that a policy is somehow unlawful. It's to determine whether on the facts of this case, this individual was retaliated against. And the administrative law judge went through a detailed analysis that included lots of facts. And again, to your point, Judge Watford, if this rule were so unreasonable and so unfair, you would expect to see that most people who are injured get disciplined for violating it. You don't see that. You see the opposite. What you see is that most people who violate who report injuries do so in a timely manner and don't have any problems whatsoever, including Mr. Thorson's and himself seven times. And then one point I would like to make on the issue having to do with the strict enforcement of the rule. In 2009, Mr. Thorson reported an injury. He was not disciplined for that. It's no question about that. There's no dispute about that. And what he did is almost exactly what happened here to a point. He injured himself. He didn't realize he was injured right away. Two days passed. He went to the doctor and he then reported his injury after he went to the NSF. They found in that circumstance, evidently, that it was perfectly reasonable for him to have gone to the doctor first and then report it. You mentioned that there was no discipline. Wasn't there on his record put, I forget, it's this S violation or whatever it is, that is put there and then carried over so that within the 12-month period, there was a second violation, and that's why he was terminated. So isn't that first S violation that's put on his record, isn't that something that some form of discipline? So that is true for the 2010 injury. Yes. What I'm referring to is that in 2009, he reported injury number seven, if you will. He reported that injury and he did so after 48 hours had passed and after he had seen a doctor. That's in the record at excerpts from record at 14 to 15. And he acknowledges there was no discipline. There was no level S suspension, nothing. He was out for some period of time. He then came back from that injury, had injury number eight, which is the one for which there was a level S suspension, a record suspension, we call it, which means a suspension with no time lost. And he received that record suspension for reporting late. But if he had done exactly what he did in 2009, which is go to the doctor on the 19th, tell the doctor I banged my knee, have the doctor provide treatment. And remember, we are also obligated under federal regulations to report within seven days when we have an employee who has a work-related injury for which he receives medical treatment. That's another reason for the prompt reporting rule. The purpose of this is not to go after employees for reporting injuries, because again, your factual record will look very different if that were the case. And the rule would probably be significantly more unreasonable, right? Can I just jump in? I know we're over time, but can I ask one other question? I just want to be clear on the railroad's position. So let's say it really was impossible for the employee to report within the 72 hours, and yet the person was disciplined. In that circumstance, would we be able to say, well, you know what, really the only fair inference is to assume that they really were trying to go after him merely because he filed the injury report itself? Sure. Look, I think on those facts, there might be a finding by the fact finder of pretext, for example, right? Which would be discrimination, right? You got this rule, you knew he couldn't comply with it, and you nonetheless enforced it against him. There might be evidence submitted by the railroad that they thought he could comply for some reason, and the fact finder might accept or reject that, right? But in your view, the critical thing here is that he went to the doctor within the two days and already had an awareness that there was a reportable event, and so it therefore wasn't impossible? Is that what this whole case turns on in your view? So, you know, that was clearly our view, and the ALJ accepted it. I think for purposes of this court, what it turns on is, is that decision so bad that it is not supported by substantial evidence? And I think the answer to that is clearly no. There is an abundance of evidence here, and again, all of these arguments were made to the administrative law judge, right? And the administrative law judge said the rule is not unreasonable. He did know what to do. He did talk to his doctor. Can you explain why in, I think it's pronounced brew or brow, it came out so differently? All the way down the line, including the administrative law judge and the board, all of it went just the other way. Yeah, and look, not being Judge Gee, I can't necessarily get into her head. She came out completely differently in the Meyer case. Same rule, right? She herself came out differently. I think there, it may very well be that she did not accept the company's explanations in the way that the fact finder did here. Again, these are the folks who sit and listen to the witnesses. They determine credibility. They decide, do I believe this person or not? Do I believe this employee when he says he didn't know? He clearly didn't believe Mr. Thorstensen when he said he didn't know. He thought he didn't know. He thought there was enough information provided by Mr. Thorstensen, particularly given his seven prior injuries, that he was familiar with the process. He's clearly questioning. He says he was updating people on their symptoms, yet here he did not. That's a line from the ALJ's decision. He's clearly questioning Mr. Thorstensen's decisions here and the way Mr. Thorstensen acted, right? That's sort of his prerogative at this point, right? The question we ask now is, is it so bad? Is the decision so bad that there's not substantial evidence to support it? And again, I think we have your argument in mind. Thank you. I appreciate it. You have literally under two minutes, but we gave considerably additional time to the other side. Let's put it back at four minutes, if you would, Ms. Brevner. Thank you, your honor. I just quickly want to address what the ALJ actually held regarding the requirement or ability of a petitioner to report his injury in this case. The ALJ made no finding that going to the doctor on the 19th had any relevancy to Thorstensen's ability or requirement to report. What the ALJ found in this case was that the policy requires reports of injuries, not reports of changing symptoms, and that Thorstensen had no obligation to report doctor's appointments or changes in symptoms from this prior injury, unless they affected his ability to work. What the ALJ then went on to reason was that because Thorstensen voluntarily reported changes in symptoms from his prior injury, he could have voluntarily done so in this instance. And it's our position that that is an arbitrary decision and our ALJ also found that the policy required reports of injuries, not changes in symptoms. Can I ask a question? So I understand your position that certainly in the scenario where it's impossible for the employee to comply with a 72-hour rule, if he gets disciplined, then yeah, we're perfectly entitled to to infer that the reason is retaliation for the protected activity itself. But what's your response then to the argument on the other side that, well, that's not this case? Because it wasn't impossible. He did have enough knowledge within the 72-hour period to make the report, and he simply didn't. And that's the only reason he got disciplined. But those aren't the facts. He went to his doctor on the 19th, which was within the 72-hour period. But his doctor didn't diagnose him with any injury. The doctor didn't keep him off of work. The doctor simply said, I'm going to give you a prescribed ibuprofen, go back to work. And there was no diagnosable injury. And that in the doctors in IER 100 shows as much that there was no diagnosable injury. Doctors diagnose injuries. Employees do not diagnose their own injuries. And unless they have an injury to report, they cannot comply with the rule. The rule does not require a report of pain or symptoms. It requires report of injuries. And he did not learn that he had an injury that required him to be off of work until the 22nd, which was five days after the possible triggering event, or probable triggering event, which is how the rule terms the event. Yes, but they say, counsel, they say that the rule is not, the threshold for the rule is not that you've been injured to the point where it interferes with your ability to work. Well, no, but it requires reports of injuries. And the thing that's crucial here is he had previously injured the same knee in a prior year. And he had bumped his knee many times before, and it had never manifested into a reportable injury. So, you know, and he had not reported that. And so he thought he had already reported, you know, these changes and symptoms by reporting his 2009 injury. And when he goes to his doctor on the 19th, he believes it's an aggravation of this 2009 injury, which he had already reported. And even when he goes to BNSF claims manager and the medical nursing staff, they tell him they're going to treat it as the same injury, which he's already reported. And then when he goes to his supervisor, his supervisor doesn't even know whether it's something that he has to report. And yet he's heavily punished for not reporting something that his doctor doesn't tell him it's not an injury, that BNSF staff isn't going to treat as a new injury, that his own supervisor doesn't know whether it's required to be reported as a new injury. And until he's told to report it as a new injury, which he immediately complies with, that information doesn't happen until outside that 72 hour period. And unless the court has further questions, I'll rest on my brief. No, it appears not. Thank you all for your argument this morning. The case of Thorstensen versus Department of Labor and BNSF Railway Company is submitted and we're adjourned for the morning. Court for this session stands adjourned.
judges: McKeown, Watford, Rothstein